**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| DAVID H. MARTIN, | * |
| Plaintiff, | * |
| | * |
| v. | Case No.: PWG-14-3450 |
| | * |
| DOUGLAS DEVELOPMENT | |
| CORPORATION, | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

For five years, Plaintiff David Martin worked an eight-hour shift (5:30 A.M. to 2:00 P.M. every weekday) as an engineer for Defendant Douglas Development Corporation ("Douglas"). On February 5, 2014, Martin reported for jury duty at the Circuit Court for Calvert County, Maryland, and was released at 12:00 P.M. that same day. Concluding that he could not make it to work before the end of his shift two hours later, Martin went home and, later that week, reported a full day of jury-duty obligations on his timesheet. Shortly thereafter, Douglas fired Martin when its GPS-tracking system disclosed that he was released from jury duty before the end of his shift. In a suit filed in the Circuit Court for Calvert County, Maryland, Martin alleged that the discharge violated Maryland's public policy against terminating an employee for attending jury duty. ECF No. 2. Douglas removed the case to this Court, ECF No.1, and now moves for summary judgment on the wrongful-discharge claim.[1] ECF No. 69. The Motion is

---

[1] Martin's Amended Complaint also alleges violations of the Fair Labor Standards Act (FLSA) and its District-of-Columbia analogue (Counts II and III). Am Compl. ¶¶ 36–37, 43–44. Those claims are not the subject of Douglas's Motion.

fully briefed, Def.'s Mem., ECF No. 92-1; Pl.'s Opp'n, ECF No. 96; Def.'s Reply, ECF No. 97, and no hearing is necessary, Loc. R. 105.6 (D. Md.).   Because the record lacks any evidence that supports an inference that Martin was fired for *attending* jury duty (as distinct from being fired for not returning to work following jury duty or falsely reporting a full day of jury duty on his timesheet), I find that his termination did not violate Maryland's public policy.

## Background

Douglas is a property-development and -management company owned by Douglas Jemal and his two sons, Norman and Matthew.   Joint Statement of Undisputed Facts ¶¶ 15–16, ECF No. 98 [hereinafter Joint Statement].   The company hired Martin as an engineer in October 2008. *Id.* ¶ 30.   Martin was an at-will employee.   Joint Statement ¶ 1.   During his tenure, Martin worked a 5:30 A.M. to 2:00 P.M. shift.   *Id.* ¶ 4.   It took Martin roughly 45 minutes in early-morning traffic to drive from his home in Dunkirk, Maryland, to his workplace in the Georgetown neighborhood of Washington, D.C.   *Id.* ¶ 5.   Until his termination, Douglas never took disciplinary action against Martin for tardiness, absenteeism, unsatisfactory work performance, or insubordination.   Def.'s Resp. Pl.'s Requests Admission Nos. 3–6, J.A. 283.

In December 2013, Martin received a jury summons from the Circuit Court for Calvert County, Maryland, which required him to be on call for jury duty from January 21 until February 14, 2014.   Jury Summons, J.A. 298.[2]   Upon receipt, Martin faxed a copy of the summons to Douglas, which the employer received and acknowledged.   Joint Statement ¶¶ 31–32; Transmission Verification Report, J.A. 297.   The summons required Martin to call in to the court once per week to find out if he would be required to appear the following week.   Jury Summons, J.A. 298.   Whenever Martin called in and found that he was not required to report to jury duty,

---

[2] Citations to J.A. refer to the Joint Appendix that the parties submitted in the case, which appears at ECF No. 99.

he emailed Douglas to inform the employer that he would be reporting to work as usual. *See* Email from David Martin, to Bryul Blaney (Jan. 27, 2014, 5:36:58 P.M.), J.A. 299; Email from David Martin, to Tim Roberts (Feb. 10, 2014, 7:18:17 P.M.).   On February 3, 2014, Martin notified Douglas that he was "tentatively scheduled for jury duty" on February 5, 2014.   Joint Statement ¶¶ 33–34.

Douglas provides its employees paid time off for jury duty but requires employees to return to work if jury duty ends before their normally scheduled shift concludes. *See* Douglas Dev. Corp. Employment Manual § 8.8, J.A. 277.

On February 5, Martin did not go to work for the beginning of his 5:30 shift. *See* Joint Statement ¶ 10.   Instead, he left his home at 7:30 A.M. and reported to jury duty at 8:00 A.M. Joint Statement ¶ 9.   He was dismissed at 12:00 P.M. and drove home, arriving at his house at 12:30 P.M. *Id.*

Martin testified at his deposition that he spoke with Douglas's payroll administrator, Lily Jiang, Jiang Dep. 18:14–15, J.A. 213, before filling out his timesheet the following Monday, Martin Dep. 137:5–16, J.A. 112.   According to Martin, he told Jiang that he did not report to work after jury duty because he was unable to make it to work before the end of his shift at 2:00 P.M., and Jiang told him to claim a full eight hours on his timesheet. *Id.* at 145:15–146:1, 15–17, J.A. 114.   Jiang does not recall whether she spoke with Martin about this topic but does not think that she did.   Jiang Dep. 42:18–43:6, J.A. 219 ("I d[o]n't remember [whether I spoke with Martin.]   I don't think I . . . talk[ed] to him before the times for that day.   They [employees] know how to fill out the forms, you know.").   Martin submitted a timesheet for the payroll period ending on February 7, 2014 that claimed eight hours of jury-duty time.   Feb. 7, 2014 Douglas Dev. Corp. Weekly Time Sheet, J.A. 173.   Douglas Director of Property Management Timothy

3

Roberts authorized payment for all of the hours Martin claimed for that week, Feb. 1–7, 2014 Douglas Dev. Corp. Payroll Summary Sheet, J.A. 713, and Martin received payment for all of the hours claimed, Feb. 7, 2014 Earning Statement, J.A. 811.

Douglas monitors some hourly employees using a GPS-tracking system called TeleNav. Roberts Dep. 31:7–11, J.A. 43; Gardiner Dep. 47:8–10, J.A. 160. Some combination of Roberts, Douglas Property Managers Amanda Wallace and Hannah Kang, and Director of Engineering James Gardiner, reviewed employee timesheets by comparing them against TeleNav data. *Id.* at 30:18–32:2. Although Roberts approved Martin's timesheet for the pay period that ended on February 7, 2014, a line item marked "Jury Duty" on Martin's earning statement for the following week deducted $172 (an amount equal to four hours of work at Martin's rate of $43 per hour) from his paycheck. Feb. 14, 2014 Earnings Statement, J.A. 304. The record does not make clear which Douglas employee identified the alleged discrepancy.

Douglas terminated Martin's employment on February 17, 2014. Joint Statement ¶ 12. The termination took effect immediately. Martin Dep. 148:8–9, J.A. 114. Although the record contains somewhat differing accounts of the reasons for Martin's termination, various Douglas employees identified Martin's failure to report to work after jury duty, the allegedly erroneous timesheet, Martin's job performance, and the company's desire to reorganize the engineering department as the reasons for his termination.[3] Accounts also differ about who made the

---

[3] Martin testified at his deposition that Gardiner and Roberts notified him of his termination, attributing the decision to a reorganization of the engineering department. Martin Dep. 148:2–7, J.A. 114. Later that day, Gardiner emailed Martin and identified the "primary reason" for Martin's termination was that he "put in a full day of Jury Duty leave when in fact [he was] only required to be there for ½ day," which he described as a violation of company policy and as "theft." Joint Statement ¶ 40. Martin testified at his deposition that on the evening of his termination he spoke on the phone with the company's owner, Douglas Jemal, who also called Martin a "thief." Martin Dep. 165:5–20, J.A. 119. Jemal testified at his deposition that Martin was fired for a "combination of a couple of things" including his failure to report to work

ultimate termination decision.  Roberts Dep. 67:21–68:1, J.A. 52 (identifying Gardiner as the decisionmaker); Jemal Dep. 26:8–9, J.A. 70 (same); Millstein Dep: 61:17–62:10, J.A. 32 (testifying that he approved Gardiner's decision to fire Martin); Gardiner Dep. 58:22–59:4, J.A. 163 (identifying Jemal and Milstein as the relevant decisionmakers).

### Standard of Review

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c)(1)(A); *see also Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013).  If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986).  The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

---

after jury duty and his job performance.  Jemal Dep. 27:21–28:4, J.A. 70.  Roberts indicated in his deposition testimony that Martin was fired for failing to report to work after jury duty. Roberts Dep. 71:17–72:2, J.A. 53.  Douglas Vice President Paul Milstein testified at his deposition that Martin was terminated because of the company's desire to get "more technical expertise directing the engineers" but also because Gardiner believed that Martin "stole" from the company.  Milstein Dep. 61:4–5, 65:21–66:11, J.A. 33.

## Discussion

Maryland common law permits termination of an at-will employee such as Martin, Joint Statement ¶ 1, for any reason not otherwise prohibited by law.  *Adler v. Am. Standard Corp.*, 432 A.2d 464, 467 (Md. 1981); *State Comm'n on Human Relations v. Amecom Div. of Litton Sys., Inc.*, 360 A.2d 1, 5 (Md. 1976); *Wash. B. & A. R.R. Co.*, 96 A. 273, 276 (Md. 1915).   Among other exceptions to Maryland's at-will regime, an employer cannot terminate an employee in a manner that violates public policy.   *Wholey v. Sears Roebuck*, 803 A.2d 482, 488 (Md. 2002); *Adler*, 432 A.2d at 473.   To bring a wrongful-discharge claim based on public policy, "[1] the employee must be discharged, [2] the basis for the employee's discharge must violate some clear mandate of public policy, and [3] there must be a nexus between the employee's conduct and the employer's decision to fire the employee.   *Wholey*, 803 A.2d at 489.

Martin alleges that his termination violated § 8-501 of Maryland's Courts and Judicial Proceedings Code.  Am. Compl. ¶¶ 23–24.  Section 8-501 provides:

    (a) An employer may not deprive an individual of employment or coerce, intimidate, or threaten to discharge an individual because the individual:

        (1) Loses employment time in responding to a [jury] summons . . . or attending, or being in proximity to a circuit court for jury service under this title; or

        (2) Exercises a right to refrain from work under subsection (b) of this section.

    (b) An employer may not require an individual who is summoned and appears for jury service for 4 or more hours, including traveling time, to work an employment shift that begins

        (1) On or before 5 p.m. on the day of the individual's appearance for jury service; or

        (2) Before 3 a.m. on the day following the individual's appearance for jury service.

    (c) A person who violates any provision of this section is subject to a fine not exceeding $1,000.

Md. Code Ann., Cts. & Jud. Proc. § 8-501.  The statute provides no explicit cause of action, and the parties cite no authority (nor have I found any) that recognizes the statute as establishing a public policy on which a wrongful-discharge claim can be premised.  But in *Wholey*, in which the Maryland Court of Appeals recognized a public policy favoring whistleblower protection, 803 A.2d at 494, the Court provided a guidepost for determining what types of public policy can serve as a foundation for a wrongful-charge claim by noting *Adler*'s approving reference to

> the United States Supreme Court's conclusion "that public policy embodies a doctrine of vague and variable quality, and, unless deducible in the given circumstances from constitutional or statutory provisions, should be accepted as the basis of judicial determination, if at all, only with the utmost circumspection. The public policy of one generation may not, under changed conditions, be the public policy of another."

*id.* at 489–90 (quoting *Adler*, 432 A.2d at 472) (emphasis removed).  As § 8-501 unmistakably protects employees from termination when they are obligated to respond to a jury summons, I have no difficulty recognizing the statute as a viable basis for a wrongful-discharge claim.

Douglas argues that it is entitled to summary judgment because it did not fire Martin for attending jury duty but because he violated Douglas's employment policies by failing to return to work after his jury service concluded but before his shift ended.  Def.'s Mem. 4.  Douglas's Employment Manual sets forth the following jury-duty policy:

> Non-field employees who are called to Jury Duty will be allowed time off with pay while on jury duty if the jury duty falls during the employee's regularly scheduled work hours.  Upon return to work, employees will need to provide a record of jury service.  *If jury duty hours do not constitute a full workday, employees are expected to return to work for the remainder of that day.* Employees who are "on call" for jury duty are expected to remain or return to work until such time as the employee is called for active jury duty.  While on jury duty the Company will pay and employee's regular straight time.

Douglas Dev. Corp. Employment Manual § 8.8, J.A. 277 (emphasis added).

Martin raises two principal arguments against Douglas's Motion.  First, Martin argues that Douglas's policy violates Maryland's prohibition on terminating employees for attending jury duty.  Pl.'s Opp'n 15–17.  Second, he contends that genuine disputes of material fact exist as to (1) whether he had enough time to get to work before his shift ended on the day of his jury service; (2) the reason for his termination; and (3) the identity of the individual responsible for his termination.  *Id.* at 9, 17–19.  None of these arguments are availing.

<u>Validity of Douglas's Jury-Duty Policy</u>

Martin argues that Douglas's jury-duty policy violates § 8-501(b)(2) by forcing employees to work before 3:00 A.M. on the day following an appearance for jury duty.  Pl's Opp'n 15–17.  Martin's argument requires a construction of § 8-501.  I am aware of no Maryland case law interpreting the statute in its current form or its predecessor.[4]  Read in isolation, § 8-501(b)(2) could be interpreted to bar employers from requiring employees to work any time between an employee's release from jury duty and 3:00 A.M. on the following day.  *See* Md. Code Ann., Cts. & Jud. Proc. § 8-501(b)(2).  But the preceding subsection prohibits employers from requiring employees to work "[o]n or after 5 p.m. on the day of the individual's appearance for jury service."  *Id.* § 8-501(b)(1).  Martin's apparent interpretation of § 8-501(b)(2) would render § 8-501(b)(1) superfluous.  If § 8-501(b)(2) covers all hours between the conclusion of jury service and 3:00 A.M. the following day, then there would be no need for a specific prohibition against requiring employees to work after 5:00 P.M. on the day of their jury service.  Maryland courts "interpret statutes to give every word effect, avoiding constructions that render any portion of the language superfluous or redundant."  *Gillespie v. State*, 804 A.2d 426, 427 (Md. 2002).  A construction of § 8-501(b) is available that allows each subsection to serve an

---

[4] Section 8-501, which was enacted in 2006, 2006 Md. Laws 2004, is derived from a similar predecessor, Md. Code Ann., Cts. & Jud. Proc. §§ 8-105, -401 (2002 & Supp. 2005).

independent function.  I find that § 8-501(b)(1) applies to the hours of 5:00 P.M. until 11:59 P.M. on any day that an individual appears for jury duty, while § 8-501(b)(2) applies to the hours of 12:00 A.M. to 3:00 A.M. the following day.  Together, the two sections cover a ten-hour range from 5:00 P.M. on one day to 3:00 P.M. the next day.

Douglas's policy does not contain language that explicitly exempts the hours of 5:00 P.M. to 11:59 P.M. from its requirement that employees return to work after jury duty concludes. *See* Douglas Dev. Corp. Employment Manual § 8.8, J.A. 277.  But Martin's shift ended at 2:00 P.M., Joint Statement ¶ 4, and nothing in § 8-501(b) prohibits an employer from requiring an employee to return to work before 5:00 P.M. on the same day as a jury-duty appearance.  *See id.* Accordingly, I do not find Douglas's policy inconsistent with § 8-501's charge.

Disputed Facts

Martin contends that he was unable to get to work before the end of his shift "[b]ecause the drive to [his workplace] would take nearly an hour in mid-day traffic—and could even take significantly more time in heavy traffic."  Pl.'s Opp'n 9.  If the record contained evidence that demonstrated that it was impossible for Martin to get to work before 2:00 P.M., then Martin might have a viable claim.   Section 8-501 protects employees from adverse employment consequences due to "responding to a [jury] summons . . . or attending, or being in proximity to a circuit court for jury service."  Md. Code Ann., Cts. & Jud. Proc. § 8-501(a)(1).  Although the statute does not explicitly cover travel to and from the courthouse, the policy would have no effect if employees could be penalized for not being at work at the moment before or after jury duty.   Accordingly, I find that the statute's protections for "attending" jury duty encompass travel to and from the courthouse.  *Id.*

But that said, Martin has offered no evidence that it was impossible for him to get to his workplace before 2:00 P.M. on the day of his jury service.  The record shows that Martin arrived at his home at 12:30 P.M. after jury duty concluded and that it ordinarily took him 45 minutes to drive to work from his home at 4:30 A.M.   Joint Statement ¶¶ 5, 10.   Assuming a similar commute time at 4:30 A.M. and 12:30 P.M., Martin could have arrived at work by 1:15 P.M. Although I accept Martin's assertion that a midday commute from his home to his workplace takes more than 45 minutes, Martin has provided no evidence concerning traffic conditions on February 5, 2014, and he neither attempted to drive to work nor called anyone at Douglas to ask whether he should attempt to come in.   Pl.'s Opp'n 9; Joint Statement ¶ 11.   As Douglas correctly notes, "[w]hile it may seem trivial to have required Plaintiff to travel 45 minutes, or one hour, from his residence to work after his jury duty service ended, only to work for a fraction of an hour, it is not for this Court, or a jury, to conclude that such travel was not worth the work time."   Def.'s Reply 6.   "Trivial" is a self-servingly neutral way to describe an employment policy that would countenance the termination of an almost 65-year-old employee after five years of satisfactory service over, at most, 45 minutes of missed work.  Draconian is more fitting. But the wisdom or fairness of Douglas's policy is not material to Martin's claim.

Martin does point to genuine disputes in the record as to the reason for Martin's termination and the identity of the individual(s) who made the termination decision.  *See supra*. But these facts, too, are not material to his claim.  First, the identity of the individual who made the termination decision is immaterial because the elements of a wrongful-discharge claim contain no requirement that any particular individual be responsible for the adverse action.  *See Wholey*, 803 A.2d at 489.   Second, that various Douglas employees articulated different reasons for Martin's termination is immaterial so long as none of the reasons put forth violate § 8-501.  It

is neither impermissible nor surprising that multiple reasons contributed to Douglas's decision to terminate Martin's employment, and none of the various explanations for Martin's termination identified by Douglas employees violate the statute. *See* Martin Dep.  148:2–7, J.A. 114 (reorganizing engineering department); Joint Statement ¶ 40 (claiming excess hours on timesheet); Martin Dep. 165:5–20, J.A. 119 (same); Jemal Dep. 27:21–28:4, J.A. 70 (failure to report to work after jury duty concluded and job-performance concerns); Milstein Dep. 61:4–5, 65:21–66:11, J.A. 33 (desire to obtain "more technical expertise directing the engineers" and claiming excess hours on timesheet).  Since none of the reasons identified in the record violate § 8-501, the wrongful-discharge claim fails.

### Conclusion

Because the record lacks any evidence from which the inference can be drawn that Douglas terminated Martin's employment for attending jury duty, Douglas's Motion for Partial Summary Judgment is granted, and judgment will be entered in its favor as to Count I of Martin's Amended Complaint.  Counts II and III of the Amended Complaint will proceed.  In light of this decision, the parties would be wise to consider resuming their settlement discussions as to the remaining claims.

A separate Order follows.


Dated: <u>March 15, 2017</u>                                    <u>      /S/          </u>
                                                                      Paul W. Grimm
                                                                      United States District Judge

jlb